STEVE W. ALLEN, Plaintiff v. STAMY LINCOLN RUPARD, Defendant

No. 9021SC146

(Filed 30 October 1990)

1. **Master and Servant § 89.4 (NCI3d) — workers' compensation — settlement with tortfeasor — distribution to employee and compensation insurer — discretion of court**

   The superior court was not required to follow the priority schedule for the Industrial Commission set forth in N.C.G.S. § 97-10.2(f) when disbursing the proceeds of a settlement with a tortfeasor to an injured employee and the employer's compensation insurer pursuant to subsection (j). Rather, subsection (j) gave the court discretion to determine how the settlement proceeds should be distributed and did not require that the entire proceeds of a $25,000 settlement be distributed to an insurance carrier which had paid over $40,000 in compensation benefits and medical expenses to and for the injured employee.

   **Am Jur 2d, Workmen's Compensation §§ 627, 651, 681, 682.**

2. **Master and Servant § 89.4 (NCI3d) — workers' compensation — settlement with tortfeasor — discretion of court — due process — necessity for findings**

   N.C.G.S. § 97-10.2(j) does not give the trial court unbridled or unlimited discretion to decide how to distribute settlement proceeds between an injured employee and the employer's compensation insurer so as to violate due process. Rather, the trial court, in exercising such discretion, must enter an order with findings of fact and conclusions of law sufficient to provide for meaningful appellate review. Fifth Amendment to the U. S. Constitution; Art. I, § 19 of the N. C. Constitution.

   **Am Jur 2d, Workmen's Compensation §§ 553-560.**

3. **Master and Servant § 89.4 (NCI3d) — workers' compensation — settlement with tortfeasor — equal division between employee and compensation insurer**

   The trial court did not abuse its discretion in dividing a $25,000 settlement with a tortfeasor equally between the injured employee and the employer's compensation insurer where the amount of the settlement was insufficient to reimburse plaintiff for his pain, suffering and other losses and

ALLEN v. RUPARD

[100 N.C. App. 490 (1990)]

to reimburse the insurer for its payment of over $40,000 in compensation and medical expenses.

**Am Jur 2d, Workmen's Compensation §§ 681, 682.**

APPEAL by Pilot Freight Carriers and Protective Insurance Company from order entered on 29 November 1989 by *Judge W. Steven Allen, Sr.*, in FORSYTH County Superior Court. Heard in the Court of Appeals 18 September 1990.

*Michael Lewis for plaintiff appellee.*

*Bell, Davis & Pitt, P.A., by Joseph T. Carruthers, for appellant.*

COZORT, Judge.

On 26 June 1987, plaintiff Steve Allen was injured when the truck he was driving collided with a truck operated by Stamy Rupard. The negligence of Mr. Rupard is not at issue in this appeal; he tendered the policy limits of his liability insurance coverage to the plaintiff. Plaintiff applied to the trial court for a determination of the distribution of the $25,000 settlement proceeds from the defendant's liability insurance carrier. The trial court awarded $12,500 to the plaintiff and $12,500 to Pilot Freight Carriers [hereinafter Pilot], plaintiff's employer, and Protective Insurance Company [hereinafter Protective], Pilot's workers' compensation insurer. Protective and Pilot appealed to this Court.

The two issues presented on appeal are (1) whether the trial court was required to distribute all the settlement proceeds to the insurer; and (2) whether it is unconstitutional to give the trial court discretion as to the distribution of settlement proceeds. We hold (1) that the trial court was not required to distribute all the settlement proceeds to the insurance carrier and (2) that the trial court's decision to equally divide the settlement proceeds was an appropriate exercise of the trial court's discretion. Pertinent facts and procedural history follow.

Plaintiff was injured on 26 June 1987 while he was operating a truck within the scope of his employment. Plaintiff's injuries include a crushed vertebrae. He has had three operations requiring insertion and removal of hooks and rods in his back. Protective has paid over $40,000 in workers' compensation payments.

**ALLEN v. RUPARD**

[100 N.C. App. 490 (1990)]

On 24 June 1988, plaintiff filed suit against defendant Rupard. Rupard's insurer tendered $25,000, his policy limit, to plaintiff. Both plaintiff and Protective agreed to this lump sum settlement and release of defendant Rupard. The parties agree that Rupard was essentially judgment proof, with no additional available funds. Plaintiff also had underinsured motorist coverage. His insurer paid him $15,000, again with Protective's consent. On appeal, Pilot and Protective do not contest plaintiff's right to receive this $15,000.

Plaintiff applied to the trial judge scheduled to hear the case between plaintiff and defendant Rupard for a determination of the distribution of the $25,000 settlement proceeds from Rupard's insurer. This application was made pursuant to N.C. Gen. Stat. § 97-10.2(j) which provides:

[I]n the event that a settlement has been agreed upon by the employee and the third party when said action is pending on a trial calendar and the pretrial conference with the judge has been held, either party may apply to the resident superior court judge . . . for determination as to the amount to be paid to each [the employee and the workers' compensation insurance carrier] by such third party tort-feasor.

The court heard arguments from plaintiff's attorney and from Protective's attorney. The trial court concluded that the General Assembly granted to the superior court the discretion to determine the amount to be paid to each when there are insufficient funds to compensate both. The court ordered that $12,500 of the $25,000 tendered by the tortfeasor be paid to Protective and that the remaining $12,500 be paid to plaintiff for the "injuries suffered at the hands of the third party tort-feasor."

[1] On appeal, Protective first contends that the trial court erred in not awarding all of the settlement proceeds to the carrier because Protective's subrogation lien (over $40,000) exceeded the amount of the settlement ($25,000). Protective argues that N.C. Gen. Stat. § 97-10.2(j) should be construed in conjunction with subsection (f) to require the trial court to follow the order of priority for distribution established in subsection (f). Under subsection (f), any amount obtained by the plaintiff by settlement with the tortfeasor must be disbursed by the Industrial Commission as follows:

ALLEN v. RUPARD

[100 N.C. App. 490 (1990)]

a. First to the payment of actual court costs taxed by judgment.

b. Second to the payment of the fee of the attorney representing the person making settlement or obtaining judgment, and except for the fee on the subrogation interest of the employer such fee shall not be subject to the provisions of § 90 of this Chapter [G.S. 97-90] but shall not exceed one third of the amount obtained or recovered of the third party.

c. Third to the reimbursement of the employer for all benefits by way of compensation or medical treatment expense paid or to be paid by the employer under award of the Industrial Commission.

d. Fourth to the payment of any amount remaining to the employee or his personal representative.

Protective argues that judges of the superior court should adhere to the same priority schedule which binds the Industrial Commission. Under subsection (f), Protective would have received the entire $25,000 as compensation for the medical expenses it paid on behalf of plaintiff.

In *Pollard v. Smith*, 90 N.C. App. 585, 369 S.E.2d 84 (1988), *rev'd on other grounds*, 324 N.C. 424, 378 S.E.2d 771 (1989), this Court addressed the issue of whether the trial court has the discretion to distribute all the settlement or judgment proceeds to the injured party giving the carrier nothing on its subrogation lien. In *Pollard*, we specifically held:

Subsection (j) is clear and unambiguous, and must be given effect. Judicial interpretation of a statute is inappropriate when the Legislature has made clear its intent. *Pipeline Co. v. Clayton, Comr. of Revenue*, 275 N.C. 215, 226, 166 S.E.2d 671, 679 (1969). The section clearly provides for a different standard for disbursement when the case is before the Superior Court than that for cases before the Industrial Commission. When the General Assembly added subsection (j), it made no reference to subsection (f).

When the General Assembly amends an existing statute, as opposed to merely clarifying existing law, a presumption arises that the Legislature intended to change existing law by creating or taking away rights or duties. *Childers v. Parker's, Inc.*, 274 N.C. 256, 260, 162 S.E.2d 481, 483 (1968).

> We realize that subsection (j) allows plaintiff a double recovery at the expense of the employer or carrier, in the discretion of the Superior Court judge. Nonetheless, since the language is clear and unambiguous, we must hold that the Legislature intended this possible result.

*Id.* at 588, 369 S.E.2d at 85-86. When *Pollard* reached the Supreme Court, that court decided the case on the issue of whether it was error for the superior court to order disbursement of the proceeds from a settlement made without the written consent of the employer. *Pollard*, 324 N.C. at 426, 378 S.E.2d at 772. The issue to be decided in this case, the interpretation of subsection (j), was not reached by the Supreme Court. Thus, we are bound by the prior *Pollard* ruling by a panel of this Court. *In re Harris*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989). We hold that the trial court did not have to follow the distribution priority set forth in N.C. Gen. Stat. § 97-10.2(f).

[2] Protective's second argument here raises an issue not decided by either court in *Pollard*, *i.e.*, whether the discretion given the trial court by § 97-10.2(j) violates the United States and North Carolina Constitutions. Protective argues that the statute violates the due process clause of the Fifth Amendment of the United States Constitution, violates the "Law of the Land" clause of Article 1, Section 19 of the North Carolina Constitution, and is unconstitutionally vague.

In *State v. Fulcher*, our Supreme Court stated:

> It is well settled that if a statute is reasonably susceptible of two constructions, one of which will raise a serious question as to its constitutionality and the other will avoid such question, the courts should construe the statute so as to avoid the constitutional question.

294 N.C. 503, 520, 243 S.E.2d 338, 349 (1978) (citations omitted). Thus, if N.C. Gen. Stat. § 97-10.2(j) is susceptible of a constitutional construction, we shall adopt that construction.

Protective contends that the statute in question is flawed because it gives the trial court "unlimited" discretion, "unbridled" discretion, the ability to make the distribution without standards, guidelines, and definitions. We do not read N.C. Gen. Stat. § 97-10.2(j) in the manner suggested by Protective.

ALLEN v. RUPARD

[100 N.C. App. 490 (1990)]

In *Pollard*, we held that subsection (j) did give the trial court "discretion" in deciding how to distribute the settlement proceeds. *Pollard*, 90 N.C. App. at 588, 369 S.E.2d at 85. We do not, however, equate "discretionary" with arbitrary or capricious. "[J]udicial discretion is not the indulgence of a judicial whim, but is the exercise of judicial judgment *based on facts and guided by law.*" *Smith v. Hill*, 5 F.2d 188 (3d Cir. 1925) (emphasis supplied). This Court, through Chief Judge Mallard, has defined the exercise of discretion:

> The exercise of judicial discretion by a judge is not an arbitrary power, and is not one to be used to gratify the passion, partiality, whim, vindictiveness, or idiosyncracies of the individual judge. In the case of *Hensley v. Furniture Co.*, 164 N.C. 148, 80 S.E. 154 (1913), in discussing the nature of judicial discretion Justice Walker said:
>
> > "Judicial discretion, said Coke, is never exercised to give effect to the mere will of the judge, but to the will of the law. The judge's proper function, when using it, is to discern according to law what is just in the premises. *'Discernere per legem quid sit justum.'* *Osborn v. Bank*, 9 Wheat., 738. When applied to a court of justice, said *Lord Mansfield*, discretion means sound discretion guided by law. It must be governed by rule, not by humor; it must not be arbitrary, vague, and fanciful, but legal and regular. 4 Burrows, 2539. While the necessity for exercising this discretion, in any given case, is not to be determined by the mere inclination of the judge, but by a sound and enlightened judgment, in an effort to attain the end of all law, namely, the doing of even and exact justice, we will yet not supervise it, except, perhaps, in extreme circumstances, not at all likely to arise; and it is therefore practically unlimited. We do not interfere unless the discretion is abused."

*Musgrave v. Savings and Loan*, 5 N.C. App. 439, 443, 168 S.E.2d 497, 499 (1969). Therefore, the power given the trial court in N.C. Gen. Stat. § 97-10.2(j) is not unbridled or unlimited. Rather, the trial court is to make a reasoned choice, a judicial value judgment, which is factually supported. We hold that the trial court, in considering a request for disbursement under subsection (j), must enter an order with findings of fact and conclusions of law sufficient to provide for meaningful appellate review. *See Worthington v.*

ALLEN v. RUPARD

[100 N.C. App. 490 (1990)]

*Bynum*, 305 N.C. 478, 290 S.E.2d 599 (1982); *Veazey v. Durham*, 231 N.C. 354, 57 S.E.2d 377 (1950), and *Martin v. Martin*, 263 N.C. 86, 138 S.E.2d 801 (1964).

[3] In its order distributing the funds equally between plaintiff and Protective, the trial court below made these pertinent findings of fact:

3. Mr. Allen sustained a crushed vertebrae in the wreck, necessitating three (3) surgical procedures to his back. His treating physician, Dr. Joseph Nicastro of Bowman Gray School of Medicine is of the opinion that a fourth surgical procedure will be necessary, and that a permanent partial impairment rating will likely result.

4. The Employer and Protective Insurance Company have a subrogation lien against any third party recovery in the sum of at least $40,000.00 through the date of this hearing. The parties anticipate, in light of the necessity for a fourth surgical procedure and the anticipated permanent partial impairment rating, that the subrogation lien will be substantially in excess of $40,000.00.

5. Prior to the institution of this law suit, the Third Party Tort Feasor and Defendant herein, Stamy Lincoln Rupard, had tendered the policy limits of his liability insurance coverage in the amount of $25,000.00. Both the Employee and Employer are satisfied that the Defendant Rupard does not have sufficient personal assets from which to recover in the event of a Judgment in excess of the liability insurance limits.

* * * *

7. The law firm of Michael Lewis, Attorneys at Law, has rendered valuable services on behalf of Mr. Allen in the prosecution of this action, but is seeking no recovery for attorney fees out of the proceeds of the $25,000.00 liability insurance coverage tendered by the insurance carrier for the Defendant Stamy Lincoln Rupard.

* * * *

12. That considering the nature and circumstances of the incident, the nature and extent of the Plaintiff's injury, the fact that Plaintiff is seeking no attorney fee to be paid out of the $25,000.00 proceeds to be paid by Stamy Lincoln Rupard,

**ALLEN v. RUPARD**

[100 N.C. App. 490 (1990)]

and other circumstances in the case, the Court finds that it has authority, pursuant to G.S. 97-10.2(j) to determine the amount of recovery to be paid to both the Employee and Employer, and the Court finds that it is fair, equitable, and just that one-half (1/2) of said sum, or $12,500.00 be paid to Steve W. Allen, the Plaintiff-Employee, and that the remaining one-half (1/2) of said sum or $12,500.00 be paid to Pilot Freight Carriers, the Employer and its insurance carrier, Protective Insurance Company.

The trial court then concluded:

[T]hat it has authority, pursuant to the provisions of G.S. 97-10.2(j), when read in conjunction with the other provisions of said statute, to determine the amount to be paid to the Employee and Employer by a Third Party Tort Feasor; that it is fair and equitable and just that the Employee and Employer divided equally the $25,000.00 proceeds to be paid herein by the third party tort feasor . . . .

We find the trial court's decision to be a reasoned choice which is factually supported. Furthermore, we cannot say that the trial court abused its discretion in determining that it is fair, equitable, and just for the plaintiff and Protective to share equally the proceeds which fall far short of being sufficient to reimburse plaintiff for his pain, suffering, and other losses; or to reimburse Protective for its payment of plaintiff's extensive medical bills.

We hold, therefore, that the trial court's order was a proper, constitutional exercise of its discretionary authority under N.C. Gen. Stat. § 97-10.2(j). The order is

Affirmed.

Judges WELLS and LEWIS concur.