CHARLES JOHNSON, Plaintiff v. SOUTHERN INDUSTRIAL CONSTRUCTORS, INC., Defendant

No. COA95-940

(Filed 6 May 1997)

1. **Workers' Compensation § 85 (NCI4th)— third-party proceeds—disbursement to employee and carrier—jurisdiction of superior court**

    When a third-party judgment is insufficient to compensate a workers' compensation carrier's subrogation claim, or a settlement in a third-party action has taken place, the superior court may exercise jurisdiction over distribution of the judgment as to the employee and the carrier. The court is not limited to the payment priority set forth in N.C.G.S. § 97-10.2(f)(1) in disbursing a third-party award but may, in its discretion, apportion the carrier's share at a level it deems equitable. N.C.G.S. § 97-10.2(j).

    **Am Jur 2d, Insurance § 1794; Negligence §§ 1341, 1375; Subrogation § 53; Workers' Compensation §§ 452-454.**

    **Right of workers' compensation insurer or employer paying to a workers' compensation fund, on the compensable death of an employee with no dependents, to indemnity or subrogation from proceeds of wrongful death action brought against third-party tortfeasor. 7 ALR5th 969.**

2. **Workers' Compensation § 85 (NCI4th)— third-party proceeds—carrier's subrogation claim—benefits to be paid—disbursement by superior court**

    A superior court judge may exercise jurisdiction over disbursement of third-party proceeds under N.C.G.S. § 97-10.2(j) when there is a substantial likelihood that the amount of a com-

pensation carrier's subrogation claim on benefits to be paid will ultimately be greater than the entire third-party judgment, *i.e.*, when that judgment is insufficient to compensate the carrier's subrogation claim.

**Am Jur 2d, Insurance §§ 1794, 1795; Subrogation § 53.**

**Right of workers' compensation insurer or employer paying to a workers' compensation fund, on the compensable death of an employee with no dependents, to indemnity or subrogation from proceeds of wrongful death action brought against third-party tortfeasor. 7 ALR5th 969.**

3. **Workers' Compensation § 85 (NCI4th)— third-party proceeds—disbursement by superior court—temporary total disability—future benefits—required findings**

In deciding whether to assume jurisdiction under N.C.G.S. § 97-10.2(j), the trial court must render a reasoned decision in evaluating the likelihood of the judgment being insufficient to compensate the subrogation claim. Where the Industrial Commission has granted an award of temporary total benefits, which have no set termination date, the court's findings must address: (1) the expected duration of the employee's disability and consequent receipt of benefits as reflected by the competent evidence presented; (2) a calculation of the total benefits paid or to be paid, the latter discounted to present value; and (3) a comparison of that sum with the amount of the third-party judgment for purposes of evaluating the likelihood the judgment will be insufficient to compensate the carrier's subrogation claim.

**Am Jur 2d, Workers' Compensation §§ 616, 709, 719.**

**Insurance: "total disability" or the like as referring to inability to work in usual occupation or in other occupations. 21 ALR3d 1155.**

**What constitutes permanent or total disability within coverage of insurance policy issued to physical laborer or workman. 32 ALR3d 922.**

4. **Workers' Compensation § 85 (NCI4th)— third-party proceeds—disbursement by superior court—permanent total disability—future benefits—required findings**

In cases of permanent total disability, the calculation of future benefits expressed in the court's findings may be accom-

JOHNSON v. SOUTHERN INDUSTRIAL CONSTRUCTORS

[126 N.C. App. 103 (1997)]

plished by multiplication of the employee's weekly benefit by the number of weeks the employee is expected to live based upon the mortality table set forth in N.C.G.S. § 18-46 and other evidence presented and discounting the sum to its present value.

**Am Jur 2d, Damages §§ 879, 944; Federal Employers' Liability Compensation Acts § 124; Insurance §§ 1488, 1944, 2048, 2063; Pensions and Retirement Funds § 415; Workers' Compensation §§ 381 382, 431.**

**What constitutes permanent or total disability within coverage of insurance policy issued to physical laborer or workman. 32 ALR3d 922.**

5. **Evidence and Witnesses § 1944 (NCI4th)— letters from psychologist and economist—inadmissible hearsay**

A letter from a psychologist stating his opinion that an employee is totally disabled and a letter from a forensic economist calculating the present value of the employee's future disability benefits were presented to prove the truth of the matter asserted and were inadmissible hearsay. Therefore, the trial court erred in using these letters as the basis of its assumption of jurisdiction under N.C.G.S. § 97-10.2(j) to disburse proceeds of a judgment against a third-party tortfeasor.

**Am Jur 2d, Evidence §§ 659, 867; Insurance §§ 1966, 2088; Workers' Compensation §§ 463, 582.**

**Admissibility of opinion evidence as to employability on issue of disability in health and accident insurance and workers' compensation cases. 89 ALR3d 783.**

Appeal by unnamed parties from order entered 3 March 1995 by Judge Quentin T. Sumner in Nash County Superior Court. Heard in the Court of Appeals 15 May 1996.

*Taft, Taft & Haigler, P.A., by Thomas F. Taft and R. Alfred Patrick, for plaintiff-appellee.*

*Teague, Campbell, Dennis & Gorham, L.L.P., by George W. Dennis, III and Karen K. Prather, for unnamed party-appellants Siemens Energy and Automation, Inc. and insurance carrier Zurich-American Insurance, Inc.*

JOHN, Judge.

Unnamed parties Siemens Energy & Automation, Inc. (Siemens) and Zurich-American Insurance Company, Siemens's insurance carrier (hereinafter appellants), contest the trial court's assumption of jurisdiction pursuant to N.C.G.S. § 97-10.2(j) over a workers' compensation lien attached to a judgment secured by plaintiff Charles Lynwood Johnson against a third party. We vacate the trial court's order and remand for further proceedings.

Pertinent facts and procedural history are as follows: plaintiff, an employee of Siemens, was injured in the course of his employment when struck by a falling jib crane on 17 October 1988. Plaintiff's injuries included a herniated disc, which required a partial hemilaminectomy. Despite the surgery, plaintiff continued to experience incapacitating pain in his back, which radiated to his legs and scrotum, as well as numbness in his legs.

Siemens admitted the compensability of plaintiff's injury under the North Carolina Workers' Compensation Act (the Act) and provided coverage for his medical expenses. In addition, plaintiff received $256 per week in temporary total disability benefits pursuant to approval, according to appellants, of the "[a]ppropriate Industrial Commission forms" (presumably including Commission Form 21). Plaintiff continued to receive the latter payments at the time his brief was filed with this Court.

On 7 August 1991, plaintiff filed suit against third party tortfeasor Southern Industrial Constructors, Inc. (Southern), alleging his injuries were proximately caused by the negligence of a Southern employee. Plaintiff prevailed at trial, and judgment was entered against Southern on 12 December 1994 in the amount of $219,052.20, plus interest and court costs.

On 22 December 1994, plaintiff requested that the trial court, pursuant to N.C.G.S. § 97-10.2(j), determine the amount appellants were entitled to recover from the judgment. On 4 January 1995, appellants in turn sought distribution of the third party recovery by the Commission under N.C.G.S. § 97-10.2(f)(1).

Following a hearing, the trial court entered an order 3 March 1995 containing the following findings of fact:

8. The plaintiff has experienced continuous physical pain and mental suffering since the accident.

9. The plaintiff has not worked since being injured on October 17, 1988 except for a one week period of time during the first quarter of 1989, when the plaintiff briefly returned to Siemens.

10. Since the trial of this case was concluded, the plaintiff has been evaluated by Chapel Hill psychologist, Thomas S. Baldwin, Ph.D., who has determined the plaintiff is "totally disabled from employment at any exertional level in the national economy and that such employment in the future is not foreseen by the various medical doctors that have treated him."

11. Johnson's physical and mental condition prevent him from returning to gainful employment. It is anticipated he will continue to receive workers' compensation indemnity benefits for the rest of his life.

12. Johnson was 47 years of age at the time of trial and his life expectancy is 27.38 years. Workers compensation benefits to be paid in the future at the rate of $256.00 per week total $364,482.56. Greenville forensic economist, Michael E. McLeod, Ph.D. has determined the present value of the future payments is $178,908.63, using a 6% discount rate.

13. The total present value of the workers' compensation lien is $300,506.46 which includes the total amount of all payments made for medical expenses and indemnity through January 20, 1995 and the present value of all future indemnity payments.

14. The award of $219,052.20 is exceeded by the total lien of $300,506.46 and is insufficient to compensate the subrogation claim of Zurich-American.

15. The clerk of court's retention of the damages awarded by the jury, to satisfy Zurich-American's claim of lien, precludes the plaintiff from any recovery for physical pain and mental suffering; these non-economic losses are far greater than the economic losses suffered by the plaintiff and for which Zurich-American seeks reimbursement.

16. The nature and extent of the plaintiff's injuries and the fact the jury's award is insufficient to compensate the subrogation claim of Zurich-American, as well as other circumstances of this case, give the court the authority pursuant to N.C. Gen. Stat. § 97-10.2(j) (1987) to determine the amount to be paid to the

employee and his employer/insurance carrier. The court finds it fair and equitable that Zurich-American's lien be reduced to the total sum of $25,000.00. . . .

The court then concluded as a matter of law:

1. [This court] has authority pursuant to the provisions of N.C. Gen. Stat. § 97-10.2(j) (1987) to determine the amount of the workers' compensation lien of the plaintiff's employer, Siemens, and the employer's insurance carrier, Zurich-American.

2. It is fair and equitable to reduce the workers' compensation lien to the total sum of $25,000.00 and this amount should be paid to Zurich-American. The remaining sum of $252,995.60 now held by the clerk of superior court, shall be made available for payment of court costs, attorneys fees and damages to the plaintiff.

Appellants filed notice of appeal to this Court 29 March 1995.

_____

Generally, an employer or subrogee thereof (hereinafter "employer" or "carrier") which has compensated an employee under the Act may seek reimbursement from proceeds received by the employee from a third party tortfeasor. *Buckner v. City of Asheville*, 113 N.C. App. 354, 358, 438 S.E.2d 467, 469, *disc. review denied*, 336 N.C. 602, 447 S.E.2d 385 (1994). "The amount of reimbursement, if any, and the method for seeking that reimbursement is determined by statute," in this state N.C.G.S. § 97-10.2 (the statute has most recently been amended by 1991 N.C. Sess. Laws ch. 408, § 1, effective 1 October 1991, and 1991 N.C. Sess. Laws ch. 703, § 2, effective 15 July 1991; however, these amendments do not apply to the present case and the version of G.S. § 97-10.2 in effect prior to the 1991 amendments is cited herein, *see Fogleman v. D&J Equipment Rentals*, 111 N.C. App. 228, 232-33, 431 S.E.2d 849, 852, *disc. review denied*, 335 N.C. 172, 436 S.E.2d 374 (1993)). *Id.*

G.S. § 97-10.2(f)(1) provides:

If the employer has filed a written admission of liability for benefits under this Chapter with, or if an award final in nature in favor of the employee has been entered by the Industrial Commission, then any amount obtained by any person by settlement with, judgment against, or otherwise from the third party by reason of such injury or death shall be disbursed *by order of the Industrial Commission* . . . .

(emphasis added). The subsection thereupon recites the order of priority to be utilized by the Commission in dispersing a third party award: (1) payment of court costs, (2) payment of counsel fees, (3) reimbursement of the employer for compensation and medical benefits paid to the employee, and (4) remainder to the employee.

[1] Notwithstanding, G.S. § 97-10.2 also provides a mechanism in subsection (j) whereby dispersal of third party proceeds is permitted other than by order of the Commission. *Buckner*, 113 N.C. App. at 359, 438 S.E.2d at 470. The subsection reads in pertinent part:

> In the event that a judgment is obtained which is insufficient to compensate the subrogation claim of the Workers' Compensation Insurance Carrier, or in the event that a settlement has been agreed upon by the employee and the third party when said action is pending on a trial calendar and the pretrial conference with the judge has been held, either party may apply to the resident superior court judge of the county in which the cause of action arose or the presiding judge before whom the cause of action is pending, for determination as to the amount to be paid to each by such third party tort-feasor.

Therefore, when a third party judgment is insufficient to compensate the carrier's subrogation claim, or a settlement in a third party action has taken place, the superior court may exercise jurisdiction over distribution of the judgment as to the employee and the carrier. *Buckner*, 113 N.C. App. at 359, 438 S.E.2d at 470. The court, unlike the Commission, is not limited to the payment priority schedule set forth in G.S. § 97-10.2(f)(1) in dispersing a third party award; rather, it may in its discretion apportion the carrier's share at a level it deems equitable. *Id.*; *see also Allen v. Rupard*, 100 N.C. App. 490, 497, 397 S.E.2d 330, 334 (1990), *petition for disc. review withdrawn*, 328 N.C. 328, 404 S.E.2d 864 (1991) (no abuse of discretion by trial court "in determining . . . [a] fair, equitable, and just" apportionment of third party proceeds).

The trial court in the case *sub judice* determined the third party judgment obtained by plaintiff was "insufficient to compensate the subrogation claim" of appellants and assumed jurisdiction under G.S. § 97-10.2(j) to reduce the lien to $25,000.

## I.

Appellants first contend "the trial court did not have jurisdiction to consider and rule upon plaintiff's motion to determine appellants'

workers' compensation lien." They point to G.S. § 97-10.2(j) and assert that the judgment obtained was not "insufficient to compensate the subrogation claim of the Workers' Compensation Insurance Carrier."

At first blush, appellants' argument appears compelling; it is undisputed plaintiff had received benefits totalling approximately $120,000 at the time the third party judgment was entered, while the amount of that judgment was $219,052.20. However, plaintiff responds that he is receiving temporary total disability in the amount of $256 per week, which payments are to continue indefinitely. *See Kennedy v. Duke Univ. Med. Center*, 101 N.C. App. 24, 35, 398 S.E.2d 677, 684 (1990) (award of compensation for temporary total disability by definition is of indefinite duration). As a result, plaintiff reasons, appellants' lien would correspondingly increase for the like indefinite period, and the trial court was therefore empowered to determine whether appellants' subrogation claim would thereby exceed the amount of plaintiff's third party judgment.

G.S. § 97-10.2(j) is construed with the other provisions of the statute. *Williams v. International Paper Co.*, 324 N.C. 567, 572, 380 S.E.2d 510, 513 (1989). Under G.S. § 97-10.2(h), an employer is accorded a lien on proceeds of a third party recovery to the extent of the employer's interest under G.S. § 97-10.2(f). G.S. § 97-10.2(f)(1)(c) directs that the employer is to be reimbursed for all benefits "paid *or to be paid* . . . under award of the Industrial Commission" (emphasis added). The question remains whether the statutory reference to benefits both paid and "to be paid" allows consideration by the trial court of future benefits to be received by the employee when considering under G.S. § 97-10.2(j) whether a third party award is "[i]nsufficient to compensate the [carrier's] subrogation claim."

Initially, we note Professor Larson has commented:

A complication that, in the nature of things, cannot be avoided is the fact that at the time of distribution of the third party recovery the extent of the carrier's liability for future benefits often is unknown. Indeed, this would happen in almost every serious case in which the compensation payments are periodic and the third party recovery is reasonably prompt.

A well-drawn statute will anticipate this problem and spell out the steps to meet it.

2A Arthur Larson & Lex K. Larson, *The Law of Workmen's Compensation Law* § 74.31(e), at 14-515 (1996).

Unfortunately, G.S. § 97-10.2(j) suffers from the deficiencies anticipated by Professor Larson by failing to "spell out the steps" as to consideration of benefits "to be paid." We must therefore look to the legislative intent regarding the section in order to determine a proper response to the issue presented. As our Supreme Court observed in *Deese v. Lawn and Tree Expert Co.*, 306 N.C. 275, 278, 293 S.E.2d 140, 143 (1982):

> in all cases of doubt, the intent of the legislature regarding the operation or application of a particular provision is to be discerned from a consideration of the Act as a whole—its language, purposes and spirit.

As we have noted, an employer is to be reimbursed by way of subrogation for all benefits paid as well as those *"to be paid,"* G.S. § 97-10.2(f)(1)(c) (emphasis added), in the future. The terminology employed by the General Assembly thus reflects an intent that future benefits be considered by the trial court in the determination of whether a third party judgment is adequate to compensate an employer's subrogation claim, which by terms of the statute extends to *all* benefits.

Moreover, the statutory scheme permits removal of the disbursement process from the schedule of priorities required of the Commission under G.S. § 97-10.2(f)(1) and places distribution of third party proceeds within the discretion of the Superior Court under the conditions specified in G.S. § 97-10.2(j). Enactment of such a system appears grounded in equitable considerations, *see Allen*, 100 N.C. App. at 497, 397 S.E.2d at 334, and strongly suggests a legislative purpose to ensure *some* recovery by a severely injured employee from a third party judgment. Indeed, this Court has observed:

> We realize that subsection (j) allows plaintiff a double recovery at the expense of the employer or carrier, in the discretion of the Superior Court judge. Nonetheless, since the language is clear and unambiguous, we must hold that the Legislature intended this possible result.

*Id.* at 494, 397 S.E.2d at 332 (quoting *Pollard v. Smith*, 90 N.C. App. 585, 588, 369 S.E.2d 84, 86 (1988), *rev'd on other grounds*, 324 N.C. 424, 378 S.E.2d 771 (1989)). Rather than plaintiff herein obtaining a *double* recovery in consequence of obtaining a third party judg-

ment, however, the interpretation advanced by appellants would likely result in plaintiff receiving no distribution whatsoever from that judgment.

The instant record, for example, contains appellants' proposed order on their "Motion for Distribution of Third Party Recovery" by the Commission pursuant to G.S. § 97-10.2(f)(1). Appellants provide therein for the Commission to direct the overage remaining following disbursement of plaintiff's judgment to be held by the Clerk of the Superior Court of Nash County and dispersed to appellants annually in an amount equal to benefits paid in the foregoing year (less an appropriate allocation for counsel fees).

Under the procedure advanced by appellants, therefore, a severely injured employee such as plaintiff who has been awarded benefits of indeterminate duration might never receive any proceeds from a third party judgment obtained in consequence of his injury and through his initiative. The excess rather would be held from the employee until death (upon which the employer is released from paying benefits), or would be entirely consumed in reimbursing the employer for continuing benefits. Thus, while appellants argue to this Court that future benefits should not be included in determining the amount of their subrogation claim under G.S. § 97-10.2(j), they nonetheless assert a claim upon benefits to be paid in the future and accordingly seek to prevent plaintiff from gaining access to any portion of his third party judgment. Appellants' one-sided position contravenes the clear equitable purpose and spirit of G.S. § 97-10.2(j), and we decline to accept it.

[2] In short, we hold a superior court judge may exercise jurisdiction over dispersement of third party proceeds where there is a substantial likelihood that the amount of a carrier's subrogation claim on benefits "to be paid" will ultimately be greater than the entire third party judgment, i.e., when that judgment is "insufficient to compensate the [carrier's] subrogation claim," G.S. § 97-10.2(j).

Appellants complain that the superior court should not be allowed to "speculate" on the amount of future benefits a claimant will receive, and we agree. Specifically, appellants assert that "[i]f a trial court were permitted to speculate whether a particular plaintiff might continue to receive compensation benefits and, if so, for how long, it would be determining the outcome of an ongoing workers' compensation matter." However, appellants' argument is flawed in several respects.

First, the trial court would not be encroaching upon the province of the Commission in assessing the amount of a claimant's future benefits. In regard to plaintiff, the Commission has sanctioned the award of temporary total disability benefits, and plaintiff is entitled to a continuing presumption of disability until a contrary finding by the Commission. *See Franklin v. Broyhill Furniture Industries*, 123 N.C. App. 200, 205, 472 S.E.2d 382, 386, *cert. denied*, 344 N.C. 629, 477 S.E.2d 39 (1996). By virtue of the indefinite nature of an award for temporary total disability, *see Kennedy*, 101 N.C. App. at 35, 398 S.E.2d at 684, the Commission, in approving plaintiff's award, has made no determination regarding the duration of his disability. The actual benefits plaintiff might receive in the future would in no way be affected; plainly, only the Commission has the power to award or deny plaintiff benefits under the Act. *See Carpenter v. Tony E. Hawley, Contractors*, 53 N.C. App. 715, 718, 281 S.E.2d 783, 785, *disc. review denied and appeal dismissed*, 304 N.C. 587, 289 S.E.2d 564 (1981) (Commission has exclusive original jurisdiction over rights afforded by Act). The trial court's calculation as to the likely duration of plaintiff's disability status would impact only the court's decision on whether to assume jurisdiction for purposes of G.S. § 97-10.2(j). *See Lemmerman v. Williams Oil Co.*, 318 N.C. 577, 580, 350 S.E.2d 83, 86 (1986) ("Every court necessarily has the inherent judicial power to inquire into, hear and determine questions of its own jurisdiction, whether of law or fact . . . .").

Nor do we believe the possibility that a claimant's award may later be modified by the Commission constitutes a basis upon which to deny the trial court jurisdiction under G.S. § 97-10.2(j). When enacting the section, the General Assembly was aware an award of the Commission would be subject to later modification. *See* N.C.G.S. § 97-47 (1991) (allowing modification of awards by Commission), and *State v. Benton*, 276 N.C. 641, 658, 174 S.E.2d 793, 804 (1970) (legislature presumed to act with knowledge of prior and existing law). Further, if the superior court should misperceive the duration of an employee's disability and temporary total benefits are later terminated by the Commission at a point where the subrogation claim has not overtaken the third party judgment, the "worst" result is that the superior court has distributed the third party judgment based upon *equitable* considerations. Thus, no undue prejudice will enure to the employer.

Finally, the trial court is not permitted to "speculate" as to the amount of a claimant's future benefits. Indeed, "[j]udicial discretion is

not the indulgence of a judicial whim, but is the exercise of judicial judgment *based on facts and guided by law." Allen*, 100 N.C. App. at 495, 397 S.E.2d at 333 (emphasis in original, citation omitted). Moreover, in assuming jurisdiction under G.S. § 97-10.2(j), the court "must enter an order with findings of fact and conclusions of law sufficient to provide for meaningful appellate review." *Id.*

We note New York's highest court has ruled that the amount of benefits a workers' compensation claimant will receive in the future is not so speculative as to preclude its determination by a trial court. *See Kelly v. State Ins. Fund*, 456 N.E.2d 791, 794 (N.Y. 1983). New York is among those states which awards to an employee the excess of a third party judgment over the carrier's lien to date, but then allows the latter a credit for the amount the employee receives. *See* N.Y. Work. Comp. Law § 29, "Practice Commentaries" (McKinney 1993); *see generally* 2A Larson at § 74.31(e). The New York Court of Appeals has held that a trial court may consider the total benefit a carrier will ultimately receive from this credit in apportioning counsel fees between employee and carrier. *See Kelly*, 456 N.E.2d at 794; *see also* 2A Larson at § 74.32(a)(4) ("most courts have concluded that the employer's equitable share of the fees and costs involved in the employee's third party recovery should be calculated on his total potential liability, rather than on past benefits actually paid"). New York trial courts, for purposes of apportioning such fees, may thus estimate (based on life expectancy tables) the amount of benefits an employee will receive in the future, discount that sum to its present value, and add that figure to the total benefits paid to date in determining the total benefit to be received by the employer from a third party award. See *Wood v. Firestone Tire & Rubber Co.*, 475 N.Y.S.2d 735, 738 (N.Y. Sup. Ct. 1984).

**[3]** Similarly, in deciding whether to assume jurisdiction under G.S. § 97-10.2(j), a trial court of this state must render a reasoned decision in evaluating the likelihood of the judgment being "insufficient to compensate the subrogation claim," G.S. § 97-10.2(j). In instances such as that *sub judice* where the Commission has granted an award of temporary total benefits, which by definition have no set termination date, *Kennedy*, 101 N.C. App. at 35, 398 S.E.2d at 684, the court's findings must address: 1) the expected duration of the employee's disability and consequent receipt of benefits as reflected by the competent evidence presented, 2) a calculation of the total benefits "paid or to be paid," G.S. § 97-10.2(f)(1)(c), the latter discounted to present value, and 3) a comparison of that sum with the amount of the third

party judgment for purposes of evaluating the likelihood the judgment will be "insufficient to compensate the [carrier's] subrogation claim," G.S. § 97-10.2(j).

With reference to cases in which the Commission has entered an award of permanent total disability or in which the trial court determines an employee's disability will continue throughout the employee's lifetime, we observe our General Assembly has codified a mortality table which states:

> Whenever it is necessary to establish the expectancy of continued life of any person from any period of such person's life, whether he be living at the time or not, the table hereto appended shall be received [as evidence] in all courts and by all persons having power to determine litigation . . . .

N.C.G.S. § 8-46 (1986); *see also Gillikin v. Burbage*, 263 N.C. 317, 327, 139 S.E.2d 753, 761 (1965) (mortality table competent evidence bearing upon life expectancy and earning capacity of permanently disabled person). The table is not conclusive, and must be considered in conjunction with other evidence regarding the health, constitution, and habits of the person whose life expectancy is at issue. G.S. § 8-46; *Starnes v. Tyson*, 226 N.C. 395, 398, 38 S.E.2d 211, 213 (1946).

[4] Accordingly, in cases of permanent total disability, the calculation of future benefits expressed in the court's findings may be accomplished by multiplication of the employee's weekly benefit by the number of weeks the employee is expected to live (based upon the table and other evidence presented) and discounting the sum to its present value.

Lastly, we note that while appellants have cited *Hieb v. Lowery*, 121 N.C. App. 33, 464 S.E.2d 308 (1995), *aff'd*, 344 N.C. 403, 474 S.E.2d 323 (1996), in support of their position, *Hieb* is inapposite to the issue at hand. In *Hieb*, this Court and the Supreme Court were asked to determine whether the word "judgment" in G.S. § 97-10.2(j) refers to the proceeds actually recovered in a third party action or to the amount awarded by the trial court, collectable or not. Each court concluded that the word "judgment" is to be given its plain meaning, and that it designates the amount set forth in the court's judgment, regardless of collectability. *Hieb*, 121 N.C. App. at 38, 464 S.E.2d at 311; 344 N.C. at 410, 474 S.E.2d at 327. However, there is no dispute herein regarding what amount constitutes the "judgment" under § 97-10.2(j). Rather, we are concerned with the amount of appellant's "subrogation claim."

In sum, appellants were subrogated to plaintiff's third party judgment to the extent of benefits "paid or to be paid." The trial court therefore did not err by determining plaintiff's future benefits were to be included when ascertaining the amount of appellants' "subrogation claim" under § 97-10.2(j).

## II.

**[5]** We next turn to appellants' contention that the trial court based its order upon improperly admitted evidence. At the hearing on his motion pursuant to G.S. 97-10.2(j), plaintiff offered into evidence a letter from psychologist Thomas S. Baldwin, Ph.D., stating, *inter alia*,

> Mr. Johnson is totally disabled from employment at any exertional level in the national economy and that such employment in the future is not foreseen by the various medical doctors that have treated him.

Plaintiff's evidence also included a letter from forensic economist Michael E. McLeod, Ph.D., estimating plaintiff's life expectancy as "27.38 years according to North Carolina General Statutes mortality tables" and calculating the present value of plaintiff's future disability payments using a discount rate of 6%. Neither letter was certified by its author. The trial court's findings of fact, upon which it relied in reaching the decision to assume jurisdiction under G.S.§ 97-10.2(j), are entirely dependent upon these letters.

Appellants object that the bases of the trial court's findings constituted inadmissible hearsay. We agree the court received the out of court statements contained in the foregoing letters "to prove the truth of the matter asserted," N.C.G.S. § 8C-1, Rule 801(c), and that *no statutory exception justified admission of the letters into evidence*, *see* N.C.G.S. § 8C-1, Rule 802. Appellants were entitled to the benefit of cross-examining plaintiff's witnesses with regard to the critical assertions contained in their statements.

Absent the inadmissible hearsay evidence, the record presented on appeal contains no evidence to support the trial court's findings, which in consequence likewise cannot sustain the court's conclusions of law relating to its assumption of jurisdiction under G.S. § 97-10.2(j) and to distribution of the proceeds of plaintiff's third party judgment. Under the circumstances *sub judice*, we therefore vacate the order of the trial court and remand this matter "for further hearing and specific findings of fact," based upon such competent evidence as plaintiff and appellants elect to present, concerning "the crucial questions

BENEFICIAL NORTH CAROLINA v. STATE ex rel. BANKING COMM.

[126 N.C. App. 117 (1997)]

presented." *Sizemore v. Maroney*, 263 N.C. 14, 22, 138 S.E.2d 803, 808 (1964) (matter remanded for further hearing and specific findings of fact concerning conclusion of law not supported by findings of fact); *see also Bank v. Insurance Co.*, 265 N.C. 86, 97, 143 S.E.2d 270, 278 (1965).

Vacated and remanded.

Chief Judge ARNOLD and Judge McGEE concur.